IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————————

Case Nos. 22-1499, 25-2650, 25-2761

———————————

LINDA MIGLIORI, FRANCIS J. FOX, RICHARD E. RICHARDS, KENNETH RINGER, and SERGIO RIVAS,

Appellees / Cross-Appellants

v.

LEHIGH COUNTY BOARD OF ELECTIONS,

Appellants / Cross-Appellees.

———————————

Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civ. Action No. 5:22-cv-397)
District Judge: Honorable Jeffrey L. Schmehl

———————————

SECOND-STEP BRIEF OF APPELLEES / CROSS-APPELLANTS

———————————

Richard T. Ting
Witold J. Walczak
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
412-681-7736
rting@aclupa.org
vwalczak@aclupa.org

Stephen A. Loney, Jr.
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
215-592-1513
sloney@aclupa.org

Adriel I. Cepeda Derieux
AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
202-457-0800
acepedaderieux@aclu.org

Ari Savitzky
Sophia Lin Lakin
AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
212-284-7334
asavitzky@aclu.org
slakin@aclu.org

*Counsel for Appellees-
Cross Appellants*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ......................................................3

STATEMENT OF ISSUES FOR REVIEW ..........................................3

STATEMENT OF RELATED CASES .................................................6

STATEMENT OF THE CASE...............................................................6

    A. Plaintiff Voters File Suit to Require the Board to Count Plaintiff Voters' Ballots....................................................................................6

    B. Plaintiff Voters Prevail in Their Federal Litigation and Get Their Votes Counted.................................................................................8

    C. Plaintiff Voters Seek Fees and the District Court Grants Them ..............10

SUMMARY OF THE ARGUMENT ....................................................16

ARGUMENT ........................................................................................19

I.   The District Court Correctly Determined that Plaintiff Voters Are Prevailing Parties.............................................................................19

    A. Standard of Review .................................................................19

    B. Plaintiff Voters Obtained Final, Permanent Relief Against the Board ....19

    C. The Relief Plaintiff Voters Obtained Is No Less Enduring Due to the Supreme Court's Subsequent Grant of *Munsingwear* Vacatur................21

II.  The District Court Acted Within Its Discretion in Correctly Determining that No Special Circumstances Exist to Decline Awarding Attorneys' Fees ....................................................................................25

    A. Standard of Review .................................................................25

    B. The Narrow Special Circumstances Exception to Awarding Fees Does Not Apply ..................................................................................25

III. The District Court Erred in Reducing Plaintiff Voters' Reasonable Fee Request ...................................................................................................29

    A. Standards of Review..................................................................................29

    B. The Board Has Not Raised Any Issue for Appeal Regarding Reasonable Hours or Rates .........................................................................30

    C. The District Court Erred By Reducing the Hours Worked Based on Grounds Not Raised By the Board ...........................................................32

        1. The Board Did Not Meet Its Burden of Challenging the Requested Fees With Sufficient Specificity ..........................................32

        2. The District Court Erred by Reducing Plaintiff Voters' Fee Request Based on Factors Not Raised by the Board.........................................37

    D. The District Court Erred in Defining the Relevant Market and Reducing the Hourly Rates for Attorneys Walczak and Schneider..........................48

    E. The District Court Erred by Denying Plaintiff Voters an Opportunity to Seek Fees Litigating Attorneys' Fees.........................................................54

IV. This Court Should Grant Plaintiff Voters' Full Request for Fees in the Third Circuit Motion ...........................................................................................56

    A. The Requested Hours Worked Are Reasonable .......................................57

    B. The Requested Hourly Rates Are Reasonable .........................................58

CONCLUSION .....................................................................................................59

# TABLE OF AUTHORITIES

## Cases

*Ashley v. Atl. Richfield Co.*,
794 F.2d 128 (3d Cir. 1986)................................................................... 16, 25, 26, 27

*Bagby v. Beal,*
606 F.2d 411 (3d Cir. 1979)........................................................................ 22, 23

*Bell v. United Princeton Props., Inc.*,
884 F.2d 713 (3d Cir. 1989)................................... 17, 29, 30, 32, 34, 36, 57

*Brandon v. Guilford Cnty. Bd. of Elections*,
921 F.3d 194 (4th Cir. 2019) ............................................................... 27, 28

*Chastang v. Flynn & Emrich Co.*,
541 F.2d 1040 (4th Cir. 1976) ....................................................................26

*Disabled in Action Pa. v. Pierce*,
789 F.2d 1016 (3d Cir. 1986)......................................................................26

*EEOC v. City of Long Branch*,
866 F.3d 93 (3d Cir. 2017)..........................................................................29

*Hastert v. Ill. State Bd. of Election Comm'rs*,
28 F.3d 1430 (7th Cir. 1993) ......................................................................27

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................... 1, 20, 25

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
426 F.3d 694 (3d Cir. 2005)....................................... 37, 38, 41, 48, 53, 59

*Lackey v. Stinnie,*
604 U.S. 192 (2025).................................................................... 20, 23, 24

*Mains v. Sherwin-Williams Co.*,
No. 5:20-cv-112, 2022 WL 2316547 (E.D. Pa. June 28, 2022) .............................50

*Maldonado v. Houstoun*,
256 F.3d 181 (3d Cir. 2001)............................................................ 40, 44

*Migliori v. Cohen*,
36 F.4th 153 (3d Cir. 2022) ..................................................... 6, 7, 8, 20

*MP ex rel. VC v. Parkland Sch. Dist.*,
No. 5:20-cv-4447, 2021 WL 5177012 (E.D. Pa. Nov. 5, 2021)..............................49

*Newman v. Piggie Park Enters., Inc.*,
390 U.S. 400 (1968)..............................................................................26

*Orie v. Dist. Att'y Allegheny Cnty.*,
946 F.3d 187 (3d Cir. 2019)............................................................ 29, 31

*Planned Parenthood of Cent. N.J. v. Atty. Gen. of the State of N.J.*,
297 F.3d 253 (3d Cir. 2002)............................................................ 35, 40

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*,
51 F.3d 1179 (3d Cir. 1995)..................................................... 30, 48, 49, 52

*Ritter v. Migliori*,
142 S. Ct. 1824 (Mem.) (2022)............................................................8, 22

*Rode v. Dellarciprete*,
892 F.2d 1177 (3d Cir. 1990)................................. 29, 30, 32, 34, 37, 40, 48, 54, 55

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*,
446 U.S. 719 (1980)..............................................................................27

*Truesdell v. Phila. Hous. Auth.*,
290 F.3d 159 (3d Cir. 2002)..................................................................19

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950).......................................................................... 2, 9, 16, 22

*United States v. Payano*,
930 F.3d 186 (3d Cir. 2019)..................................................................31

*Ward v. Phila. Parking Auth.*,
634 F. App'x 901 (3d Cir. 2015) ............................................................25

## Statutes

28 U.S.C. § 1291 ...................................................................................3

28 U.S.C. § 1331 ...................................................................................3

28 U.S.C. § 1343 ...................................................................................3

42 U.S.C. § 1983 ...................................................................................3

42 U.S.C. § 1988 ..............................................................................3, 20

52 U.S.C. § 10101 ............................................................................3, 7

## Other Authorities

Katherine Reinhard & Robert H. Orenstein, *Cohen Wins Lehigh County Judicial Election by 5 Votes*, PA. CAPITAL-STAR (June 17, 2022), https://penncapital-star.com/election-2022/cohen-wins-lehigh-county-judicial-election-by-5-votes/ ......................................................................................................9

## Rules

3d Cir. L.A.R. 27.3.............................................................................56

E.D. Pa. Local Civil Rule 40.1.................................................. 18, 51, 53

E.D. Pa. Local Civil Rule 7.1................................................................11

Fed. R. App. P. 27 ...............................................................................11

## INTRODUCTION

As successful civil rights plaintiffs, Appellees / Cross-Appellants Linda Migliori, Francis J. Fox, Richard E. Richards, Kenneth Ringer, and Sergio Rivas's ("Plaintiff Voters") are entitled to attorney's fees as a matter of course under 42 U.S.C. § 1988. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). After Plaintiff Voters successfully fought to have their ballots counted in the 2021 municipal election, the District Court correctly determined that Plaintiff Voters were "prevailing parties" under the statute and awarded fees.

Plaintiff Voters filed this case seeking an order requiring the Lehigh County Board of Elections ("the Board") to count Plaintiff Voters' mail ballots—and those of 252 similarly situated voters—in the 2021 municipal election in Lehigh County. Plaintiff Voters won the exact relief they sought following expedited proceedings in both the District Court and this Court. The District Court, following direction from this Court, ordered the Board to count the votes at issue. The Board complied, Plaintiff Voters' votes were included in the certified election results, and the winning candidate in the last contested race, which had been held open during the pendency of litigation, was sworn in as a judge of the Court of Common Pleas for Lehigh County.

The Board's position, both in the District Court and on appeal, relies on the fact that, after Plaintiff Voters prevailed, the Supreme Court issued an order

vacating this Court's judgment as moot pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). This argument is fundamentally misguided: the reason this Court's judgment was rendered moot pending review was *precisely because* Plaintiff Voters successfully obtained all the relief sought. *Munsingwear* only applied because the relief won had been fully implemented in Plaintiff Voters' favor before the Supreme Court could review the merits of the appeal. The resulting vacatur did not reverse this Court's ruling on the merits or do anything to undo the relief. Plaintiff Voters' ballots are still included in the final vote count, and the winner of the contested Court of Common Pleas race continues to serve on the bench today. The vacatur merely extinguished the precedential value of this Court's prior opinion without changing the results of this case. The District Court thus correctly determined that Plaintiff Voters are prevailing parties.

The only District Court errors with respect to fees are the three identified by Plaintiff Voters' cross-appeal: the District Court erred by reducing Plaintiff Voters' attorneys' hours worked based on grounds never raised by the Board, in defining the relevant market for reasonable rates as Allentown rather than the Eastern District of Pennsylvania, and preemptively denying Plaintiff Voters' request for a reasonable fee for litigating attorneys' fees without giving Plaintiff Voters an opportunity to submit evidence in support of that request.

Accordingly, the Court should reject the Board's appeal in its entirety, reverse the District Court's reductions in requested fees, order additional fees in Plaintiff Voters' favor, and direct that Plaintiff Voters be given the opportunity to supplement their fee request to include fees expended litigating over fees.

## JURISDICTIONAL STATEMENT

Plaintiff Voters' underlying claims arose under 52 U.S.C. § 10101 and 42 U.S.C. § 1983, and this appeal arises out of Plaintiff Voters' request for attorneys' fees pursuant to 42 U.S.C. § 1988, following judgment in their favor on the underlying claims. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

The District Court, on July 31, 2025, issued a final order granting in part and denying in part Plaintiff Voters' motion for attorneys' fees and disposing of all parties' claims. The Board filed a timely notice of appeal on August 26, 2025. Appx. 001-07. Plaintiff Voters filed a timely notice of cross-appeal on September 9, 2025. Appx. 008-09.

This Court has jurisdiction over the appeal and cross-appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES FOR REVIEW

1.  Did the District Court correctly determine that Plaintiff Voters are prevailing parties for purposes of 42 U.S.C. § 1988, where Plaintiff Voters

3

obtained final, enduring, judicially-ordered relief in their favor, namely the

counting of their votes pursuant to an order and judgment of this Court? *See* Bd.

Br. in Opp. to Pet. for Att'ys' Fees 5-8, E.D. Pa. Dkt. No. 71; Reply Br. in Support

of Pls.' Pet. for Att'ys' Fees 1-3, E.D. Pa. Dkt. No. 72; Appx. 021-27 (Opinion,

Apr. 5, 2023).

      Suggested Answer: *Yes.*

      2. Did the District Court act within its discretion in determining that no

"special circumstances" warrant denial of a reasonable fee, where the Board did

not allege any misconduct by Plaintiff Voters? *See* Bd. Br. in Opp. to Pet. for

Att'ys' Fees 8-11, E.D. Pa. Dkt. No. 71; Reply Br. in Support of Pls.' Pet. for

Att'ys' Fees 3-7, E.D. Pa. Dkt. No. 72; Appx. 027-28 (Opinion, Apr. 5, 2023).

      Suggested Answer: *Yes.*

      3. Did the District Court err in reducing Plaintiff Voters' requested

reasonable hours, where the Board offered untimely objections that provided no

analysis as to why the hours worked were unreasonable? *See* Reply Br. in Support

of Pls.' Pet. for Att'ys' Fees 8-10, E.D. Pa. Dkt. No. 72; Supp. in Support of Pls.'

Pet. for Att'ys' Fees 2-3, E.D. Pa. Dkt. No. 76; Response to Def.'s Supp. Br. 1-4,

E.D. Pa. Dkt. No. 78; Objections to R&R 1-2, E.D. Pa. Dkt. No. 102 at 1-2;

Appx. 010 (Order adopting R&R); Appx. 037-44 (R&R).

Suggested Answer: *Yes.*

4. Did the District Court err in reducing the hourly rates of two senior attorneys based on a determination that the relevant market for reasonable rates is Allentown, where Plaintiff Voters provided evidence that there is no Allentown market separate from the Eastern District of Pennsylvania, and the Board provided no contrary evidence? *See* Reply Br. in Support of Pls.' Pet. for Att'ys' Fees 7-8, E.D. Pa. Dkt. No. 72; Pls.' Br. Regarding Allentown Rates 1-3, E.D. Pa. Dkt. No. 99; Objections to R&R 2, E.D. Pa. Dkt. No. 102; Appx. 010 (Order adopting R&R); Appx. 049-52 (R&R).

Suggested Answer: *Yes.*

5. Did the District Court err in preemptively denying Plaintiff Voters' request for a reasonable fee for litigating attorneys' fees, without providing Plaintiff Voters an opportunity to submit evidence in support of a reasonable fee? *See* Objections to R&R 2, E.D. Pa. Dkt. No. 102; Appx. 010 (Order adopting R&R); Appx. 058 n.18 (R&R).

Suggested Answer: *Yes.*

5

6. Should this Court grant Plaintiff Voters' full requested reasonable fee for litigating the prior appeal in this case, where the Board's untimely objections provided no analysis as to why the requested hours or rates were unreasonable?

Suggested Answer: *Yes*.

## STATEMENT OF RELATED CASES

The substantive merits of this case were resolved following a prior appeal to this Court (No. 22-1499). Plaintiff Voters then filed a motion for attorneys' fees in that appeal. This Court referred that motion to the District Court, which made recommendations regarding that motion in its July 31, 2025 Order. On October 1, 2025, this Court ordered the parties to address in their briefing of these cross-appeals the District Court's recommendation regarding that motion for fees.

## STATEMENT OF THE CASE

### A.    Plaintiff Voters File Suit to Require the Board to Count Plaintiff Voters' Ballots

This case addressed whether federal law required the Board to count Plaintiff Voters' mail ballots in the November 2021 municipal election, even though Plaintiff Voters were among 257 voters in Lehigh County who mistakenly failed to write a meaningless date on a form printed on the outer mail ballot return envelope. *See Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022).

Two candidates for judge of the Lehigh County Court of Common Pleas were within 80 votes of one another in the November 2021 election. Joint Stip. of

Facts 3-4, E.D. Pa. Dkt. No. 27.[1] The Board initially voted to count the mail ballots of voters who made this inconsequential mistake in dating the outer envelope form, and the candidate who had been in the lead brought suit in state court. *Id.* at 5-6. The Pennsylvania Commonwealth Court ruled that the Pennsylvania Election Code required the ballots to be set aside as a matter of state law, and the Pennsylvania Supreme Court declined to review that decision. *See id.* at 6-7; *Migliori*, 36 F.4th at 158 & n.15. The Board then refused to count the mail ballots of Plaintiff Voters and the other identically situated voters, citing state law.

Plaintiff Voters brought suit in federal court relying on the Materiality Provision of the Civil Rights Act of 1964, which provides that the right to vote cannot be denied "in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(b). It was, and always has been, undisputed that the mail ballots at issue had been timely returned to the Board. Joint Stip. of Facts 4-5, E.D. Pa. Dkt. No. 27.

---

[1]   For portions of the record not included in the appendix, Plaintiff Voters use "E.D. Pa. Dkt. No." to refer to filings in the District Court (E.D. Pa. No. 5:22-cv-397). "No. 22-1499 Dkt. No." refers to filings in the prior appeal in this Court.

**B.     Plaintiff Voters Prevail in Their Federal Litigation and Get Their Votes Counted**

The District Court granted summary judgment in favor of the Board and against Plaintiff Voters, holding that individual voters lacked a private right of action to enforce the Materiality Provision. Opinion, E.D. Pa. Dkt. No. 49 (Mar. 16, 2022). Plaintiff Voters then appealed to this Court. After expedited briefing and oral argument, this Court reversed, holding that Plaintiff Voters could enforce the Materiality Provision under 42 U.S.C. § 1983, and that, on the merits, the refusal to count Plaintiff Voters' ballots violated the Materiality Provision. Judgment, No. 22-1499 Dkt. No. 80 (May 20, 2022), amended by Dkt. No. 82 (May 23, 2022), and Dkt. No. 85 (May 27, 2022).

With the results of the Court of Common Pleas election still not certified pending the federal court litigation, this Court remanded this case to the District Court with instructions to "enter an order that the undated ballots be counted." *Id.* This Court issued a more detailed opinion on May 27, 2022. *Migliori*, 36 F.4th 153. Intervenor David Ritter—the losing Court of Common Pleas candidate who had been leading the race before Plaintiff Voters sued—sought an emergency order from the United States Supreme Court to block the relief ordered by this Court and prevent Plaintiff Voters' ballots from being opened and counted, but the Supreme Court denied that relief. *Ritter v. Migliori*, 142 S. Ct. 1824 (Mem.) (2022).

8

The next day, on June 10, 2022, the District Court ordered the Board to "count the undated ballots at issue in this matter," and entered judgment in favor of Plaintiff Voters and against the Board. Order at 1, E.D. Pa. Dkt. No. 59. The Board then opened and counted the ballots at issue in this case, included the votes in the final vote tally, and certified the election, providing Plaintiff Voters with the complete relief that they sought when they filed their lawsuit. *See* Appx. 014 (Opinion, Apr. 4, 2023). The winning candidate in the Court of Common Pleas race was seated and continues to serve to this day. Katherine Reinhard & Robert H. Orenstein, *Cohen Wins Lehigh County Judicial Election by 5 Votes*, PA. CAPITAL-STAR (June 17, 2022), https://penncapital-star.com/election-2022/cohen-wins-lehigh-county-judicial-election-by-5-votes/.

On July 7, 2022, after certification of the election, Ritter filed a petition for writ of certiorari with the U.S. Supreme Court, asking the Court to vacate this Court's judgment as moot pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). Ritter argued that the case became moot once the Board counted the ballots at issue and certified the election. *See* Appx. 014 (Opinion, Apr. 4, 2023). On October 11, 2022, the Supreme Court granted Ritter's Petition, vacated this Court's judgment pursuant to *Munsingwear*, and remanded with instructions to dismiss the case as moot. *See id.* The Supreme Court did not issue an opinion or address the merits of this Court's decision. *See id.* Application of *Munsingwear*

9

thus extinguished the precedential value of this Court's prior ruling, but it did not

unwind the results of this case. Plaintiff Voters' ballots were still included in the

final vote count, and the winning candidate in the Court of Common Pleas election

remained the winner of the race.

### C.    Plaintiff Voters Seek Fees and the District Court Grants Them

On November 10, 2022, following resolution of the petition for certiorari,

Plaintiff Voters filed motions for attorneys' fees in both the District Court ("the

District Court Motion"), E.D. Pa. Dkt. No. 65, and this Court ("the Third Circuit

Motion"), No. 22-1499 Dkt. No. 97. In support of the motions, Plaintiff Voters

submitted declarations, including detailed time records, from each of the attorneys

who worked on the case. Appx. 088-117 (declarations in support of District Court

Motion); Declarations in support of Third Circuit Motion, No. 22-1499 Dkt. Nos.

97-2 to 97-8. Plaintiff Voters requested $249,122.50 in reasonable attorneys' fees

for the District Court litigation, E.D. Pa. Dkt. No. 65, and $248,404.00 for

litigation in this Court, No. 22-1499 Dkt. No. 97-1. The submissions detailed how

Plaintiff Voters' attorneys had rapidly investigated the vote denial at issue,

researched potential claims and built a legal theory, pulled together a factual record

and negotiated a stipulated set of facts on an expedited basis, briefed cross-motions

for summary judgment, and then took an expedited appeal to this Court that

included full briefing and oral argument. *See* Appx. 088-117 (declarations in

support of District Court Motion); Declarations in support of Third Circuit Motion, No. 22-1499 Dkt. Nos. 97-2 to 97-8.

The Board's deadline to respond to the Third Circuit Motion was November 21, 2022, *see* Fed. R. App. P. 27(a)(3) (responses to motions due within 10 days of service of the motion), and the Board's deadline to respond to the District Court Motion was November 25, 2022, *see* E.D. Pa. Loc. Civ. R. 7.1(c) (responses to motions due within 14 days of service of the motion). The Board did not file a response to either motion by the prescribed deadline. *See* No. 22-1499 Docket; Appx. 071 (District Court Docket).

On November 28, 2022, the District Court, "upon consideration of [the Board's] failure to timely file a brief in response to Plaintiffs' . . . pending Motion for Attorneys' Fees," ordered the Board to respond to the District Court Motion by December 2, 2022. Order, E.D. Pa. Dkt. No. 69. The Board finally filed a response to the District Court Motion on December 1, 2022. E.D. Pa. Dkt. Nos. 70, 71. With respect to the reasonableness of Plaintiff Voters' fee request, the Board argued that the lodestar amount should be reduced "to zero, or, at best to a nominal amount," without identifying any objectionable hours worked by Plaintiff Voters' attorneys. Bd. Br. in Opp. to Pet. for Att'ys' Fees 15-16, E.D. Pa. Dkt. No. 71. The Board's only objection regarding Plaintiff Voters' requested hourly rates was that the

11

relevant market is "the Lehigh Valley," not Philadelphia or the Eastern District of Pennsylvania. *See id.* at 14-15.

On April 4, 2023, the District Court issued an opinion holding that "Plaintiffs brought this lawsuit seeking to have their ballots counted in the November 2021 election, and when all is said and done, Plaintiffs ballots *were* counted pursuant to judicial mandate, making them the prevailing party." Appx. 026. The District Court also determined that no "special circumstances" would render a fee award unjust, as "[t]he Board has failed to meet its heavy burden to show that Plaintiffs, through their conduct or non-meritorious claims, have made an award of attorney's fees unjust in this case." Appx. 027. However, the District Court deferred reaching a final decision on the amount of the fee award and ordered the parties to file supplemental briefs regarding the reasonableness of the requested fees. Appx. 006 (Order, Apr. 4, 2023).

The parties filed supplemental briefs as ordered on May 8, 2023, and on May 15, 2023, filed responses to the supplemental briefs. *See* Appx. 072 (District Court Docket); E.D. Pa. Dkt. Nos. 76-79. In this supplemental briefing, the Board for the first time listed the hours worked by Plaintiff Voters' attorneys for fifteen tasks the Board apparently sought to dispute, but the Board did not specifically explain why the hours worked were objectionable or suggest what amount of hours would have been reasonable for any of those tasks. Bd. Supp. Br. 5-6, E.D. Pa.

Dkt. No. 77. The Board instead continued to argue generally that any lodestar

calculation should be reduced "to zero, or, at best to a nominal amount." *Id.* at 8.

On June 15, 2023, this Court referred the Third Circuit Motion "to the

District Court in the first instance for the requisite fact-finding to resolve the

attorneys' fees issues arising before both this Court and the District Court." Order,

No. 22-1499 Dkt. No. 103. On June 20, 2023, the District Court ordered the Board

to file a response to the Third Circuit Motion by July 3, 2023. Order, E.D. Pa. Dkt.

No. 81. The Board did not file a response to the Third Circuit Motion by the July 3,

2023, deadline. Instead, the Board instead filed an "Answer" to the District Court

Motion on June 30, 2023. Answer to Pls.' Pet. for Att'ys' Fees, E.D. Pa. Dkt. No.

82; *see* Appx. 073 (District Court Docket). On July 5, 2023, the District Court

again ordered the Board to respond to the Third Circuit Motion, setting a new

deadline of July 7, 2023. Order, E.D. Pa. Dkt. No. 83.

The Board then filed an opposition to the Third Circuit Motion on this

Court's docket, seven months after the original November 22, 2022 due date. Opp.

to Appellants' Mot. for Att'ys' Fees, No. 22-1499 Dkt. No. 105 (July 6, 2023). The

Board provided no explanation for why it did not file a timely response to the

Third Circuit Motion. *See id.* Because the Third Circuit Motion had been referred

to the District Court, the Board's opposition to the Third Circuit Motion was

eventually entered on the District Court Docket. E.D. Pa. Dkt. No. 85; *see*

13

Appx. 073 (District Court Docket). The Board in its belated response to the Third Circuit Motion continued to argue that Lehigh Valley rates should apply and that the fee award should be reduced to zero, or a "nominal" amount, E.D. Pa. Dkt. No. 85 at 17-19, without proposing a reasonable fee or offering any specific argument as to why the hours worked were unreasonable.

On September 23, 2024, the District Court referred the fee dispute to a United States Magistrate Judge for the purpose of writing a Report and Recommendation. Order, E.D. Pa. Dkt. No. 94. On March 4, 2025, the Magistrate Judge ordered the parties to "submit evidence of the Allentown market rates for civil rights attorneys," Order, E.D. Pa. Dkt. No. 95, which the parties did on March 24, 2025, Appx. 118-28 (Board's evidence); Appx. 134-254 (Plaintiff Voters' evidence). *See* Appx. 074 (District Court Docket). The Board submitted a declaration from its own attorney for this litigation. Appx. 118-29. Plaintiff Voters submitted two attorney declarations, Appx. 135-46, and attorney appearance data, Appx. 147-254, in support of their contentions that the Eastern District of Pennsylvania is the proper market, and, alternatively, that Plaintiff Voters' requested rates are reasonable even if there is a distinct Allentown market.

The Magistrate Judge issued a Report and Recommendation ("R&R") on May 19, 2025, recommending reducing Plaintiff Voters' attorneys' hours worked, finding that Allentown is the relevant market for reasonable rates, reducing the

requested hourly rates for Attorneys Schneider and Walczak from $750 to $725, and denying Plaintiff Voters' request for fees pertaining to the attorneys' fees litigation. Appx. 035-44, 049-56, 058 n.18. With respect to the Third Circuit Motion, the Magistrate Judge also recommended reducing the hours worked. Appx. 044-49.

On June 2, 2023, Plaintiff Voters filed objections to the R&R, objecting to the recommended reduction in hours worked because, among other things, the Board failed to meet its burden of challenging the requested fees with sufficient specificity, and the recommended reductions were not based on objections raised by the Board. Objections 1-2, E.D. Pa. Dkt. No. 102. Plaintiff Voters also objected to the recommended conclusion that Allentown is the relevant community for determining hourly rates, the reduction of hourly rates for Attorneys Schneider and Walczak, and the denial of fees for litigating attorneys' fees. *Id.* at 2. The Board did not file objections to the R&R, *see* Appx. 074-75 (District Court Docket), and on June 16, 2025, filed a Response to Plaintiff Voters' objections, Answer to Objections, E.D. Pa. Dkt. No. 103.

The District Court overruled Plaintiff Voters' objections, approved and adopted the R&R, and granted in part and denied in part the District Court Motion, awarding Plaintiff Voters $185,330.00 for litigation in the District Court. Appx. 010 (Order, July 31, 2025). The District Court further recommended that

15

this Court award Plaintiff Voters $183,006.50 in reasonable attorneys' fees for litigation in this Court. *Id.* This appeal and cross-appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court correctly held that Plaintiff Voters are "prevailing parties" entitled to attorneys' fees under 42 U.S.C. § 1988 because, "[s]imply put, Plaintiffs brough this lawsuit seeking to have their ballots counted in the November 2021 election, and when all is said and done, Plaintiffs ballots *were* counted pursuant to judicial mandate, making them the prevailing party." Appx. 026 (Opinion, Apr. 4, 2023). The Supreme Court's order vacating this Court's judgment as moot pursuant to *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), does not change Plaintiff Voters' prevailing party status.

The District Court also acted within its discretion in determining that no "special circumstances" would make a fee award unjust. The narrow special circumstances exception to a fee award "is an extremely limited one that is applied only in unusual circumstances and then only upon a strong showing by the party asserting it." *Ashley v. Atl. Richfield Co.*, 794 F.2d 128, 134 n.9 (3d Cir. 1986). The Board's special circumstances argument relies on the Board's own conduct, and the Board does not allege any misconduct by Plaintiff Voters. Because "the focus of the special circumstances inquiry is on the merit of the plaintiff's claim, and not

"[t]he defendant's motivations and strategy choices," the Board's "special circumstances" argument fails. *Id.*

The District Court, however, erred in three aspects of reducing Plaintiff Voters' requested reasonable fee. First, the District Court erred in reducing Plaintiff Voters' attorneys' hours worked. A court may not reduce a reasonable fee request if the objecting party fails to provide objections that are "specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989). The District Court gave the Board multiple opportunities to provide clear objections, but the Board failed to do that. The Board in multiple court filings merely summarized the law on reasonable fees, generally objected to the use of multiple attorneys, and listed fifteen tasks with the hours worked, never suggesting what amount of hours would have been reasonable or providing any analysis of why the hours worked for the fifteen tasks were unreasonable. The Board instead repeatedly argued, as it does on appeal, that any fee award should be reduced to zero or a nominal amount. Because the Board did not provide sufficiently specific objections to the hours worked, the District Court erred in reducing the hours worked. And even if the Board's objections were legally sufficient to warrant a reduction in hours, the District Court abused its discretion in applying an "hours

per page" work rate analysis that arbitrarily divided "drafting" and "revising" documents instead of considering the total hours worked preparing documents.

Second, the District Court erred in reducing the hourly rates for Attorneys Schneider and Walczak based on a conclusion that Allentown, rather than the Eastern District of Pennsylvania, is the relevant market for reasonable rates. The District Court cited no evidence (and the Board provided none) to support its conclusion, ignored prior decisions from the District Court's judges sitting in Allentown that awarded fees based on Philadelphia market rates, ignored a declaration from an attorney who practices in the Eastern District of Pennsylvania, and misunderstood the relevance of attorney appearance data showing that the majority of lawyers representing plaintiffs in civil rights cases in the District Court's Allentown Region are from the District Court's Philadelphia Region.[2] The relevant market is the Eastern District of Pennsylvania.

Third, the District Court erred in preemptively denying Plaintiff Voters' request for a reasonable fee for litigating attorneys' fees. The District Court recognized that Plaintiff Voters are entitled to such a fee but nonetheless denied an

---

[2] Based on the District Court's case assignment procedures, Plaintiff Voters use "Philadelphia Region" to refer to Philadelphia, Bucks, Chester, Delaware, and Montgomery Counties, and the court's Philadelphia courthouse location. "Allentown Region" refers to Berks, Lancaster, Lehigh, and Northampton Counties, and the court's Allentown, Easton, and Reading courthouse locations. *See* E.D. Pa. Loc. Civ. R. 40.1.

award of such fees because Plaintiff Voters did not provide documentation of hours worked litigating attorneys' fees. But because Plaintiff Voters had no reason to submit such documentation until the fee litigation was resolved, the District Court erred in denying Plaintiff Voters an opportunity to do so.

This Court should order an award of attorneys' fees in the full amount requested by Plaintiff Voters, including for Plaintiff Voters' successful prior appeal.

## ARGUMENT

### I.    The District Court Correctly Determined that Plaintiff Voters Are Prevailing Parties

#### A.    Standard of Review

The standard of review for determination of prevailing party status is plenary. *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002).

#### B.    Plaintiff Voters Obtained Final, Permanent Relief Against the Board

Plaintiff Voters filed this action seeking an order requiring the Board to count their votes. The District Court granted exactly that relief, on direction from this Court. That judgment was fully and finally enforced: the Board opened the mail ballots, counted the votes, and certified the election. *See* Appx. 014 (Opinion, Apr. 4, 2023).

Prevailing parties in civil rights litigation—like Plaintiff Voters—"should ordinarily recover" fees absent "special circumstances" rendering an award "unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Congress codified that rule in 42 U.S.C. § 1988(b), which authorizes courts to award reasonable fees to prevailing parties in actions involving civil rights statutes, including 42 U.S.C. § 1983. A party "prevails" "when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the [parties'] legal relationship." *Lackey v. Stinnie*, 604 U.S. 192, 203-04 (2025).

Plaintiff Voters prevailed here by any measure, regardless of whether this Court's opinion retained its precedential effect for future litigations involving different parties. There was nothing "temporary" or "ephemeral" about the relief obtained by Plaintiff Voters. *See* Bd. Br. 2, 8, 11, 12, 13. The relief ordered by this Court had immediate, real-world consequences that continue to endure. A Lehigh County Court of Common Pleas election hung in the balance, with two candidates separated by less than 80 votes, and certification was suspended while this case proceeded. *Migliori*, 36 F.4th at 157. After conclusively resolving the merits in Plaintiff Voters' favor, this Court remanded with instructions to "enter an order that the undated ballots be counted." 36 F.4th at 156-57. On remand, the mandate was executed. The District Court entered judgment for Plaintiff Voters and ordered that the ballots be opened and counted. *See* Order, E.D. Pa. Dkt. No. 59, June 10,

2022. The Board complied, opening and counting Plaintiff Voters' ballots and those of other identically situated voters, including Plaintiff Voters' votes in the final tally, and certifying the election. *See* Appx. 014, 026 (Opinion, Apr. 4, 2023).

In other words, Plaintiff Voters obtained the complete, enduring judicial relief they sought and, therefore, are prevailing parties.

### C.     The Relief Plaintiff Voters Obtained Is No Less Enduring Due to the Supreme Court's Subsequent Grant of *Munsingwear* Vacatur.

Nothing about the subsequent *Munsingwear* vacatur of *Migliori* changes the equation because that procedural vacatur did nothing to disturb the relief that Plaintiff Voters obtained or render that relief any less enduring.

To recap: After Plaintiff Voters sought and obtained judicially-imposed relief and had their ballots counted, the Board and the losing Court of Common Pleas candidate petitioned the U.S. Supreme Court for writ of certiorari, asking that it "vacate the Third Circuit's decision and dismiss the case as moot" because, while the losing candidate had "initially intended to seek a merits review of the Third Circuit's unfavorable decision, the Supreme Court could no longer review the merits of the case given that the election had ended and the results were certified." Appx. 014 (Opinion, Apr. 4, 2023). The Supreme Court granted the petition, vacated the judgment on this non-merits basis, and remanded the case to this Court "with instructions to dismiss [it] as moot," citing *United States v.*

*Munsingwear, Inc.*, 340 U.S. 36 (1950). *Ritter v. Migliori*, 143 S. Ct. 297, 298 (Mem.) (2022).

This Court's controlling decision in *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979), illustrates exactly how the "enduring relief" principle interacts with mootness and the *Munsingwear* mechanism. In *Bagby*, a procedural due process case, the plaintiff sued to obtain a hearing from the Pennsylvania Department of Public Welfare ("DPW") regarding the suspension of her employment. She obtained a final judgment in her favor from the district court, including an order for DPW to provide a hearing and an award of attorneys' fees. 606 F.2d at 412-13. While an appeal in this Court was pending, the plaintiff received the judicially-ordered hearing she sought. *Id.* at 413. Because the plaintiff already "received all of the affirmative relief ordered by the district court," this Court vacated the district court's merits determination as moot under *Munsingwear*.[3] *Bagby*, 606 F.2d at 413-14. Despite *Munsingwear* vacatur "remov[ing] any precedential effect of the district court's opinion," this Court affirmed the fee award because the plaintiff had prevailed "on the merits" by "essentially succeed[ing] in obtaining the relief [s]he [sought]." *Bagby*, 606 F.2d at 414-15.

---

[3]    The Board mischaracterizes *Bagby* by claiming that "the relief obtained by the plaintiff was enduring" because "it was upheld rather than vacated on appeal and there was no further litigation that would overturn the relief provided." Bd. Br. 14.

So too here. *Bagby*'s holding—that a plaintiff who leaves the courthouse with all the relief they sought is a prevailing party, even if the ruling by which they obtained that relief is later vacated as moot on *Munsingwear* grounds—is directly on point and controlling. *Bagby*, 606 F.2d at 414-15. Because Plaintiff Voters obtained the relief they sought in this litigation via the enforcement of a final judicial order to count their votes, they are prevailing parties.

Nothing in *Lackey* or other cases cited by the Board changes that result. *Lackey* and other cases cited by the Board make clear that it is the *relief* that must be "enduring" for a plaintiff to be the prevailing party. For example, the Court in *Sole v. Wyner* discussed the need for relief to be enduring, but in no way suggested that vacatur of a *final judgment* due to mootness has any bearing on the prevailing party inquiry. The Court instead held only that "[p]revailing party status . . . does not attend achievement of *a preliminary injunction* that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole*, 551 U.S. at 83 (emphasis added). The plaintiff there, who won initial relief via a preliminary injunction, was not a prevailing party because they ultimately *lost* at the final judgment phase and thus were *denied* the relief they sought. *Sole*, 551 U.S. at 77-78.

*Lackey* also involved a preliminary injunction. There, the plaintiff won temporary relief via a preliminary injunction against a challenged statute, but then

23

the defendant voluntarily repealed the statute, mooting the plaintiffs' claim. 604 U.S. at 195-96. The Supreme Court explained that a plaintiff could not "become a 'prevailing party' simply because external events" operated to "convert the transient victory into a lasting one." *Id.* at 203. "Rather . . . the enduring nature of that change must itself be judicially sanctioned." *Id.*

The Supreme Court thus said in *Sole*, and continued to say in *Lackey*, that where (unlike here) the only judicial relief plaintiffs have obtained is a *preliminary injunction*, such "tentative," "transient" relief may not be sufficiently enduring to make the plaintiff a prevailing party. *Sole*, 551 U.S. at 78, 84; *accord Lackey*, 604 U.S. at 207 (contrasting "preliminary judicial relief that becomes irreversible by way of mootness" with relief "that is permanent by virtue of a judicial order"). These cases do not control where, as here, the relief obtained was final and the appeal was rendered moot precisely because of the implementation of that final relief.

Here, unlike in *Sole* and *Lackey*, Plaintiff Voters obtained a *final order* granting them *exactly* the relief they sought—namely, a final order requiring the Board to count their votes. The Board followed that order, opened and counted Plaintiff Voters' ballots, and certified the result of the election, thus permanently and irrevocably including Plaintiff Voters' votes in the result and rendering the relief Plaintiff Voters obtained unquestionably enduring.

II.  **The District Court Acted Within Its Discretion in Correctly Determining that No Special Circumstances Exist to Decline Awarding Attorneys' Fees**

A.  **Standard of Review**

A district court's determination that no "special circumstances" exist to negate a statutory fee award is reviewed for abuse of discretion. *See Ward v. Phila. Parking Auth.*, 634 F. App'x 901, 907 (3d Cir. 2015) (affirming attorneys' fee award where the "District Court was well within its discretion to conclude that no [special] circumstances exist").

B.  **The Narrow Special Circumstances Exception to Awarding Fees Does Not Apply**

The District Court correctly determined that "[t]he Board has failed to meet its heavy burden to show that Plaintiffs, through their conduct or non-meritorious claims, have made an award of attorney's fees unjust in this case." Appx. 027 (Opinion, Apr. 4, 2023). A prevailing plaintiff in a § 1983 action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (citation modified). "The 'special circumstances' exception is an extremely limited one that is applied only in unusual circumstances and then only upon a strong showing by the party asserting it." *Ashley v. Atl. Richfield Co.*, 794 F.2d 128, 134 n.9 (3d Cir. 1986). "[T]he focus of the special circumstances inquiry is on the merit of the plaintiff's claim. The defendant's motivations and strategy choices are not dispositive." *Id.*; *see also*

25

*Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-03 (1968) (finding no special circumstances and rejecting subjective standard that would have required bad faith by defendant); *Disabled in Action Pa. v. Pierce*, 789 F.2d 1016, 1020-21 (3d Cir. 1986) (holding that whether defendant's position was "substantially justified" is irrelevant to "special circumstances" analysis).

The District Court correctly applied these standards to reject the Board's special circumstances argument, which relied entirely on *the Board's own conduct*. *See* Appx. 027-28 (Opinion, Apr. 4, 2023). The Board's argument fares no better on appeal. The Board emphasizes that it initially voted to count the ballots at issue in this case and claims that it participated in a "passive" violation of a federal statute. Bd. Br. 17. The Board does not argue that Plaintiff Voters' position lacked merit or that Plaintiff Voters engaged in any misconduct. Because "the focus of the special circumstances inquiry is on the merit of the plaintiff's claim," and not on the "defendant's motivations and strategy choices," the Board has not demonstrated any special circumstances to negate Plaintiff Voters' entitlement to attorneys' fees. *Ashley*, 794 F.2d at 134 n.9.

The Board's reliance on *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976), warrants little attention. *Chastang* did not, as the Board suggests, set forth a six-factor test for analyzing special circumstances. The Fourth Circuit's affirmance of the district court's finding of special circumstances in *Chastang*

instead was based on a fact-specific analysis of the circumstances that resulted in a retirement plan discriminating on the basis of sex in violation of Title VII of the Civil Rights Act of 1964. *Chastang* is both factually inapposite and contrary to this Court's instruction that "the focus of the special circumstances inquiry is on the merit of the plaintiff's claim" and not on the "defendant's motivations and strategy choices." *Ashley*, 794 F.2d at 134 n.9.

Further, the Fourth Circuit more recently in *Brandon v. Guilford Cnty. Bd. of Elections* distinguished *Chastang* and held that "innocence" or "lack of responsibility" for enactment of an unconstitutional redistricting law are not special circumstances justifying denial of a fee award against a county elections board responsible for enforcing the law. 921 F.3d 194, 201 (4th Cir. 2019). The court held that the county elections board, as the entity responsible for enforcing the challenged law, was required to pay attorneys' fees to the plaintiffs, even though the board was not involved in enacting the law and did not defend the law in the litigation. *Brandon*, 921 F.3d at 198-201; *see also Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 739 (1980) ("Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction."); *Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430, 1444 n.16 (7th Cir. 1993) (for purposes of

attorney's fees, it was "of no consequence" that the defendant "played no active role in the proceedings and agreed to enforce whatever plan the district court adopted"). While the board's refusal to defend the law "may have *limited* its fee liability, it did not immunize the Board from fee liability." *Brandon*, 921 F.3d at 200.

Similarly, the Board here, as the entity charged with enforcing the Pennsylvania Election Code in Lehigh County, is not immunized from fee liability, even though the Pennsylvania General Assembly enacted the Pennsylvania Election Code. While the Board here might have limited its fee liability by maintaining the position it took in state court litigation, where the Board argued *in favor of* Plaintiff Voters' position, the Board here reversed its position and actively opposed Plaintiff Voters' claims in this litigation. Most significantly, the Board filed a 38-page motion for summary judgment (E.D. Pa. Dkt. No. 32) seeking judgment on the merits against Plaintiff Voters, and then actively pursued that position on appeal in this Court. The Board cannot now manufacture a "special circumstance" by arguing that it had a "passive" role in violating Plaintiff Voters' rights.

The District Court did not abuse its discretion in determining that no special circumstances justify denial of a fee award.

28

## III.    The District Court Erred in Reducing Plaintiff Voters' Reasonable Fee Request

### A.    Standards of Review

Because the Board did not object to the Magistrate Judge's R&R, *see* Appx. 074-75 (District Court Docket), the standard of review for issues addressed in the R&R and raised by the Board on appeal is plain error. *Orie v. Dist. Att'y Allegheny Cnty.*, 946 F.3d 187, 192 (3d Cir. 2019); *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017).

For issues raised on Plaintiff Voters' cross-appeal, Plaintiff Voters filed timely objections to the R&R. E.D. Pa. Dkt. No. 102. For those issues, this Court exercises plenary review over the legal standards or procedures that the district court used in calculating the lodestar. *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 718 (3d Cir. 1989); *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990). Factual findings are reviewed for clear error, and if there is no allegation of legal error, a district court's judgment with respect to the reasonableness of the lodestar request is reviewed for abuse of discretion. *Bell*, 884 F.2d at 718.

Plenary review, therefore, applies to the initial questions raised in Plaintiff Voters' cross-appeal: whether the Board's objections to the fee request were sufficiently specific to warrant a reduction in the fee request at all, and, if so, whether the District Court's reductions were justified based on specific objections made by the Board. *See id.* at 721 ("It bears noting that the district court retains a

29

great deal of discretion in deciding what a reasonable fee award is, *so long as* any reduction is based on objections actually raised by the adverse party." (emphasis added)); *see also id.* at 722 (holding that "it was within the district court's discretion" to reduce fees based on specific objections made by defendants, but "the court erred" in *sua sponte* reducing fees that defendants never challenged). Accordingly, the District Court's fee reductions are reviewed for abuse of discretion only if such reductions are warranted by specific objections made by the Board. *See id.* at 721-22.

The District Court's market definition for determining reasonable rates is reviewed for clear error. *Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1187 (3d Cir. 1995).

Finally, the District Court's denial of Plaintiff Voters' request for a reasonable fee for litigating attorneys' fees is a procedural matter subject to plenary review. *See Rode*, 892 F.2d at 1182.

## B. The Board Has Not Raised Any Issue for Appeal Regarding Reasonable Hours or Rates

Regarding the District Court's determination of a reasonable fee, the Board repeats the scant arguments it made to the District Court without identifying any aspect of the District Court's decision that was in error. *See* Bd. Br. 18-27. Regarding hours worked, the District Court at least partially agreed with the Board

by reducing Plaintiff Voters' requested hours, and the Board points to no error made by the District Court in that respect. *See* Bd. Br. 18-25.

The Board repeats its arguments that the proper market for determining rates is Allentown, and that Plaintiff Voters did not satisfy their burden of proving reasonableness of rates for Allentown. Bd. Br. 25-26. But the District Court agreed with the Board on both of those issues. Appx. 052, 054 (R&R).

The Board, therefore, has not raised any issue for appeal regarding the District Court's determinations of reasonable hours or reasonable rates. Even if the Board's brief were read generously to include some issue for review regarding reasonable hours or rates, the Board has failed to satisfy any of the factors for plain error review. *See Orie*, 946 F.3d at 194 n.14. (on plain error review, the Board "must show (1) there is an error, (2) it is plain, (3) it affects substantial rights, and (4) it seriously affects the fairness, integrity or public reputation of judicial proceedings." (citation modified)); *see also United States v. Payano*, 930 F.3d 186, 192 (3d Cir. 2019) ("[The challenger] has the burden of demonstrating that the four [plain error] factors are met.").

**C.     The District Court Erred by Reducing the Hours Worked Based on Grounds Not Raised by the Board**

  1.     The Board Did Not Meet Its Burden of Challenging the Requested Fees with Sufficient Specificity

Objections to the reasonableness of a fee request "cannot merely allege in general terms that the time spent was excessive"; rather, "they must generally identify the type of work being challenged" and "specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable." *Bell*, 884 F.2d at 720. The adverse party's brief "must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Id.* A party objecting to an entire category of work must "specify with particularity the reason for its challenge and the category (or categories) of work being challenged." *Id.* at 720-21. "A reduction for duplication is warranted only if the attorneys are *unreasonably* doing the *same* work." *Rode*, 892 F.2d at 1187 (citation modified).

Here, the Board failed to take advantage of multiple opportunities to make specific objections regarding the reasonableness of hours worked by Plaintiff Voters' attorneys. The Board instead, in at least four court filings, chose to consistently argue that Plaintiff Voters' fee request should be reduced to "zero" or a "nominal amount." Bd. Br. in Opp. to Pet. for Att'ys' Fees 14-16, E.D. Pa. Dkt.

32

No. 71; Bd. Supp. Br. 7-8, E.D. Pa. Dkt. No. 77; Supp. Reply Br. 4, E.D. Pa. Dkt.

No. 79; Bd. Statement 2, E.D. Pa. Dkt. No. 91.

In its initial response to Plaintiff Voters' District Court Motion, the Board

did not object to any particular hours and made only general objections to the use

of multiple attorneys in this complex civil rights case:

> As such, the Board contends the hours submitted by
> Plaintiffs are not reasonable for several reasons. First, the
> matter never required a factual hearing, the facts were
> stipulated to by all parties, and consisted of only legal
> argument. Second, having four attorneys, all with 17 plus
> years of experience, 2 of which have over 35 years of
> experience, is excessive, redundant, and otherwise
> unnecessary. Moreover, a review of the itemized hours
> presented indicates several of the attorneys were editing
> the same document and/or participating in the same
> activities, of which an attorney with the stated amount of
> experience could have completed or handled on their own.
> In addition, hours are submitted in which multiple
> attorneys were brainstorming, strategizing, and/or
> conferencing resulting in an effective billable rate of
> $2,500.00 per hour for internal functions. In light of the
> years of experience, there is no reasonable justification
> that four attorneys were needed to develop the single issue
> presented to the Court, nor were the hours expended
> necessary for the development of the legal work produced.
> Coupled with the fact that United States Supreme Court
> vacated the only relief obtained, and Plaintiffs were not
> ultimately successful on a single legal claim, this Court
> should exercise its discretion to reduce the reasonable
> hours to zero or, at most, a nominal amount.

Bd. Br. in Opp. to Pet. for Att'ys' Fees 13-14, E.D. Pa. Dkt. No. 71.

This was the sum and substance of the Board's objections to detailed time reports. The Board did not identify any "document," "activities," or "legal work"; any particular attorney conferences; or even the subject matter of conferences that were purportedly unreasonable. In other words, the Board did not explain how multiple attorneys were "*unreasonably* doing the *same* work." *Rode*, 892 F.2d at 1187. The Board's general sense that four experienced attorneys is too many failed to satisfy *Bell*'s requirements to "generally identify the type of work being challenged" and "specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable." *Bell*, 884 F.2d at 720.

After the District Court determined that Plaintiff Voters were prevailing parties, the District Court ordered supplemental briefing, Appx. 006 (Order, Apr. 4, 2023), giving the Board another opportunity to fill this void left in its initial objections. With this second opportunity, the Board for the first time listed fifteen tasks with hours worked by Plaintiff Voters' attorneys. Bd. Supp. Br. 5-6, E.D. Pa. Dkt. No. 77. But this mere listing of tasks with hours worked still failed to satisfy *Bell*'s requirement to "specifically state the adverse party's *grounds* for contending that the hours claimed in that area are unreasonable." *Bell*, 884 F.2d at 720 (emphasis added). The Board still did not offer any explanation for why any of the listed hours worked were unreasonable, suggest any amount of time that would have been reasonable, or explain how multiple lawyers were unreasonably doing

34

the same work. *See* Bd. Supp. Br. 5-7, E.D. Pa. Dkt. No. 77. In any event, "[e]ven if the attorneys had worked on similar tasks, this would not be *per se* duplicative" because "'[c]areful preparation often requires collaboration and rehearsal.'" *Planned Parenthood of Cent. N.J. v. Atty. Gen. of the State of N.J.*, 297 F.3d 253, 272 (3d Cir. 2002) (quoting *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir.1988)). Cases involving "multiple, complex legal questions," particularly "an issue of first impression," justify the use of multiple attorneys.[4] *Id.*

With respect to the Board's general point regarding attorney conferences, the Board still did not identify any objectionable time or the subject matter of any objectionable conferences, and did not explain why any attorney conferences were unreasonable. *See* Bd. Supp. Br. 6, E.D. Pa. Dkt. No. 77. And the Board again failed to offer any argument as to what amount of work might be reasonable under the circumstances, instead continuing to argue simply that any fee award should be reduced "to zero, or, at best to a nominal amount." *Id.* at 8.

All told, the Board's supplemental brief did nothing more than summarize the law on reasonable fees, generally object to the use of multiple attorneys, list

---

[4] This case involved multiple complex legal questions, including whether a private right of action exists under the Materiality Provision of the Civil Rights Act of 1964, and whether the Materiality Provision prohibits disqualification of Pennsylvania mail ballots solely because a voter did not handwrite a date on the ballot return envelope. Both were issues of first impression in the Third Circuit.

fifteen tasks with hours worked, and then conclude that the District Court should "reduce the reasonable hours to zero or, at most, a nominal amount." *Id.* The Board's mere listing of tasks, combined with a general objection to *all* of Plaintiff Voters' requested fees, made it impossible for Plaintiff Voters to meaningfully respond to the Board's objection. The Board's numerous court filings, E.D. Pa. Dkt. Nos. 71, 77, 79, 91, "merely allege in general terms that the time spent was excessive," and thus were not "specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Bell*, 884 F.2d at 720. The District Court thus erred in holding that the Board's objections were sufficiently specific to support a reduction in hours worked. The District Court should have held that the Board did not meet its burden of specificity under *Bell* and should have awarded Plaintiff Voters the full amount of their requested fees.[5]

---

[5]    In the Board's supplemental brief (E.D. Pa. Dkt. No. 77) and response (E.D. Pa. Dkt. No. 79) to Plaintiff Voters' supplemental brief, the Board did not address Plaintiff Voters' argument that the Board failed to raise sufficiently specific objections regarding the reasonableness of Plaintiff Voters' fee request. Plaintiff Voters raised that argument in their reply brief in support of the District Court Motion, E.D. Pa. Dkt. No. 72 at 8-10, in their supplemental brief, E.D. Pa. Dkt. No. 76 at 1-2, and in their response to the Board's supplemental brief, E.D. Pa. Dkt. No. 78 at 1-4. The District Court implicitly determined without explanation that the Board's objections were legally sufficient. *See* Appx. 037.

2.    The District Court Erred by Reducing Plaintiff Voters' Fee
Request Based on Factors Not Raised by the Board

Even if the Board's objections were legally sufficient in any respect, the

District Court erred by reducing Plaintiff Voters' requested hours based on grounds

not actually raised by the Board. After all, a court "may not reduce an award *sua*

*sponte*; rather, it can only do so in response to specific objections made by the

opposing party." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711

(3d Cir. 2005); *see also Rode*, 892 F.2d at 1183 ("The district court cannot

'decrease a fee award based on factors not raised at all by the adverse party.'"

(quoting *Bell*, 884 F.2d at 720)).

The District Court reduced Plaintiff Voters' requested hours worked in five

categories: (1) drafting the complaint; (2) reviewing and revising the parties'

stipulation of facts and Plaintiff Voters' motion for summary judgment;

(3) drafting Plaintiff Voters' summary judgment response brief; (4) performing

legal research; and (5) conferring, strategizing, and brainstorming issues.

Appx. 037-44 (R&R). These reductions were not warranted.

Hours worked preparing the complaint:

The District Court erred for at least two reasons in reducing the requested

hours for drafting Plaintiff Voters' complaint from approximately 32 hours to

23 hours. First, the District Court's reduction based on a "per page" analysis was

never raised by the Board. The Board in its supplemental brief generally objected

37

to the use of multiple attorneys and merely noted the hours spent by Attorneys Walczak (approximately 15 hours) and Schneider (17 hours) preparing the complaint. *See* Bd. Supp. Br. 5, E.D. Pa. Dkt. No. 77. The Board did not explain why 32 hours was unreasonable, but emphasized that Plaintiff Voters "only succeeded on one count" of the three-count complaint. *See id.* The District Court correctly held that Plaintiff Voters' fee request should not be reduced on that basis. *See* Appx. 043 ("It would be improper for this Court to separate the claims when they are so closely related.").

The District Court nonetheless determined that a "work rate" of one hour per page for the 21-page complaint and two hours for editing, for a total of 23 hours, was reasonable for preparing the complaint. Appx. 038-39. Because the Board provided no analysis, let alone a "per page" analysis, for why 32 hours was unreasonable, Plaintiff Voters had no opportunity to address the District Court's "per page" analysis.[6] The District Court erred by reducing hours worked based on an analysis not presented by the Board. *See Interfaith Cmty. Org.*, 426 F.3d at 711.

---

[6] This calculation based on the number of pages in the final, as-filed complaint ignores the possibility that preparing a complaint may involve investigating additional facts about additional potential plaintiffs, or researching and analyzing colorable potential claims that, after consideration by counsel, were ultimately not included in the final complaint. Thoroughly considered decisions to *exclude* matter from legal documents are often the most important and, hopefully, appreciated by courts.

Second, even if it were proper for the District Court to apply a "per page" analysis, the District Court abused its discretion by attributing all 32 hours identified by the Board to "drafting" the complaint and applying an unrealistic "one page per hour" reasonableness standard. The Board represented in its filing that Plaintiff Voters' attorneys spent 32 hours "drafting" the complaint but did not point to any time entries to substantiate that assertion. Bd. Supp. Br. 5, E.D. Pa. Dkt. No. 77. The time entries apparently corresponding to those 32 hours include not only drafting, but also research, preparation of the five Plaintiff Voters' declarations attached to the complaint (i.e., "verifications" in Attorney Schneider's time entries), phone calls with Plaintiff Voters and other potential plaintiffs, and communications with the Board's counsel. *See* Appx. 092, 104 (time entries attached to attorney declarations); *see also* Ex. 1 to Pls.' Response to Def.'s Supp. Br. 4, E.D. Pa. Dkt. No. 78-1.[7]

The District Court abused its discretion by ignoring those tasks that necessarily accompany preparing a complaint, attributing all 32 hours to "drafting" the complaint, and reducing the requested hours based on an unrealistic "one hour per page with two hours of editing." Appx. 038-39; *see Maldonado v. Houstoun*,

---

[7]  Because the Board did not identify any time entries corresponding to the hours listed in the Board's supplemental brief, Plaintiff Voters identified time entries that appeared to correspond to those hours and attached a list of those entries to their supplemental response brief. *See* E.D. Pa. Dkt. No. 78-1.

256 F.3d 181, 186 (3d Cir. 2001) (finding collective 120 hours spent by multiple attorneys on a 41-page brief was reasonable despite it encompassing only a single, uncomplicated issue).

Hours reviewing and revising the stipulation of facts and summary judgment motion:

The District Court similarly erred in reducing the reasonable hours worked for reviewing and revising the parties' joint stipulation of facts (E.D. Pa. Dkt. No. 27), and Plaintiff Voters' motion for summary judgment and supporting brief (E.D. Pa. Dkt. Nos. 33, 33-1). First, the District Court's hours reduction was not based on any argument articulated by the Board. The Board again provided no analysis for why the hours worked by multiple attorneys were unreasonable. *See* Bd. Supp. Br. 5-6, E.D. Pa. Dkt. No. 77. The Board generally objected that using four experienced attorneys was "excessive, redundant, and otherwise unnecessary" but never explained how or why Plaintiff Voters' attorneys were "*unreasonably* doing the *same* work." *Rode*, 892 F.2d at 1187; *see also Planned Parenthood*, 297 F.3d at 272. For example, the Board suggested a single attorney could have prepared court documents and completed other activities but never explained how the *hours worked* by Plaintiff Voters' attorneys were unreasonable or how the hours worked would have been different if only one attorney worked on court documents or other activities. *See* Bd. Supp. Br. 5, E.D. Pa. Dkt. No. 77 at 5.

40

The District Court's analysis, based on an arbitrary separation of time for "drafting" versus "reviewing and revising," was never raised by the Board. *See* Appx. 039-40 (R&R); Bd. Supp. Br. 5-6, E.D. Pa. Dkt. No. 77 at 5-7. Because the Board provided no analysis of why hours worked on the stipulation of facts and motion for summary judgment were unreasonable, the District Court erred by doing the Board's homework for it and reducing the hours worked based on the court's own analysis that Plaintiff Voters never had the opportunity to address in response to the Board's briefing. *See Interfaith Cmty. Org.*, 426 F.3d at 711.

Second, even if it were proper for the District Court to reduce the hours worked, the District Court abused its discretion by arbitrarily treating "drafting" documents separately from "reviewing and revising," instead of considering the total amount of time spent preparing documents. The District Court explained that: "The hours at issue are for editing and revising both documents, not drafting. A week's worth of time spent editing 41 pages is excessive given that the documents should have been in a workable state by the time editing and review occurred." Appx. 039. The District Court concluded that "the time each attorney spent editing should be considerably less than the time spent/allowed for drafting such

documents," but the District Court never assessed how much time was spent "drafting" the documents.[8] Appx. 039.

The District Court's separation of "drafting" from "reviewing and revising" is arbitrary, as "drafting" and "revising" are intertwined and there is no set definition for when a legal document transitions from a "drafting" stage to a "revising" stage. There are many ways two attorneys working together might divide work to prepare a legal document. In one instance, the first attorney spends one hour "drafting" a rough draft, and then a second attorney spends four hours "revising" the document to its final form. In another instance, the first attorney spends four hours "drafting" a near-final draft, and then the second attorney spends one hour "revising" the document to its final form. The total hours worked is five hours in both examples, and the hours worked in the first example are not unreasonable merely because more hours were spent "revising" than "drafting."

Some of the time entries the District Court attributed to "reviewing and revising" highlight the arbitrariness of separating "drafting" from "reviewing and

---

[8]  Much of the initial "drafting" of Plaintiff Voters' summary judgment motion was done by Attorney Hayes. *See* Appx. 116 (time entry noting draft summary judgment brief from Attorney Hayes). Plaintiff Voters exercised billing discretion and did not seek recovery of fees for Attorney Hayes's time, Appx. 085 (Br. in Support of Pls.' Pet. for Att'ys' Fees), further highlighting the District Court's error in arbitrarily considering "drafting" separately from "revising," instead of considering the total time spent preparing documents.

revising." For example, the District Court attributed 14.7 hours spent by Attorney Ting to "reviewing and revising Plaintiffs' summary judgment motion." Appx. 039; *see also* Bd. Supp. Br. 6, E.D. Pa. Dkt. No. 77. Included in those 14.7 hours is time spent to "[r]eview documents for summary judgment motions and outline factual support for summary judgment arguments" and "[p]repare statement of facts section for summary judgment brief." Appx. 116 (time entries attached to attorney declaration); *see also* E.D. Pa. Dkt. No. 78-1 at 6 (listing time entries apparently corresponding to tasks listed by the Board). The District Court also attributed 12.8 hours spent by Attorney Loney to "reviewing and revising Plaintiffs' stipulation of facts and summary judgment motion." Appx. 039; *see also* Bd. Supp. Br. 5, E.D. Pa. Dkt. No. 77. Those 12.8 hours include time corresponding and negotiating with opposing counsel, which was required to prepare a joint stipulation of facts. Appx. 110 (time entries attached to attorney declaration); *see also* E.D. Pa. Dkt. No. 78-1 at 2 (listing time entries apparently corresponding to tasks listed by the Board).

The District Court thus erred by reducing the requested hours worked based on an analysis that was never presented by the Board. Even if a reduction were proper, the District Court abused its discretion by arbitrarily separating "drafting" from "reviewing and revising," attributing time to "reviewing and revising"

43

documents, and reducing hours spent "reviewing and revising" documents instead of considering the total time spent preparing those documents.

<u>Hours drafting Plaintiff Voters' summary judgment response brief:</u>

The District Court repeated similar errors when it reduced hours worked preparing Plaintiff Voters' summary judgment response brief. The District Court recognized that Plaintiff Voters' attorneys did *not* unreasonably perform the same work, but nonetheless reduced the hours worked. *See* Appx. 040-41 (concluding that different attorneys worked on different parts of the summary judgment response brief). The District Court again erred by applying a "per page work rate" analysis that was never raised by the Board. Appx. 040-42.

And even if the Board's objections justified a reduction, the District Court abused its discretion by arbitrarily applying its "per page" analysis only to "drafting," separately considering "revising and editing," and separately assessing each attorney's hours worked, instead of considering the total amount of time spent preparing Plaintiff Voters' summary judgment response brief. Appx. 040-42; *see Maldonado*, 256 F.3d at 186 (finding collective 120 hours spent by multiple attorneys on a 41-page brief was reasonable despite encompassing only a single, uncomplicated issue). The District Court's conclusion on reasonable hours highlights the arbitrariness of the court's approach. The District Court surmised that Attorney Loney "drafted" 37 pages of the brief, Attorney Ting "drafted"

44

5 pages of the brief, and Attorney Schneider "drafted" 5 pages of the brief. Appx. 040-41. According to the District Court, a reasonable "drafting" work rate for Attorneys Loney and Ting is two hours per page, and a reasonable work rate for Attorney Schneider is one hour per page. *Id.* Based on that analysis, a reasonable amount of time for "drafting" *alone* would be 89 hours. Yet the District Court, by separating what the court deemed to be distinct aspects of preparing the brief and considering each attorney's hours worked in a vacuum, without regard to the total hours worked preparing the brief, concluded that a reasonable amount of time for "drafting" *and* "revising and editing" was only 84.8 hours, *including* four hours of research time. Appx. 040-42. The District Court abused its discretion in reducing hours in this manner.

Hours performing legal research:

The District Court also erred in reducing 14.9 hours of legal research time to 2 hours. The court reduced 3.5 hours of Attorney Schneider's legal research time to zero, based on the court's finding that the corresponding time entry was not specific enough. Appx. 042. The court reduced 11.4 hours of Attorney Ting's due process and equal protection legal research time to two hours, based on Attorney Ting's experience level and the court's finding that due process and equal protection "are common civil rights concepts." Appx. 042-43.

The District Court erred in making these reductions because they were not based on specific objections by the Board. The Board included the research time in its list of fifteen tasks but provided no explanation for why the research time was unreasonable. Bd. Supp. Br., E.D. Pa. Dkt. No. 77 at 5-6. The Board's argument regarding reasonableness of hours worked emphasized the use of multiple attorneys, *see id.*, which is unrelated to the reasons for the District Court's reduction of legal research hours.

Even if the Board's objections had justified a reduction, the District Court abused its discretion in reducing Attorney Ting's 11.4 hours of due process and equal protection legal research to two hours. Due process and equal protection may be "common" concepts, but they are complex, particularly as applied to the voting rights context in a novel factual situation involving the Pennsylvania Election Code. The legal research was necessary to confirm Plaintiff Voters had a reasonable constitutional claim, prior to filing their complaint, and the research was incorporated into Plaintiff Voters' motion for a temporary restraining order. *See* Appx. 115 (time entries attached to attorney declaration); E.D. Pa. Dkt. No. 78-1 at 6 (listing time entries apparently corresponding to tasks listed by the Board). It is necessary to conduct more than two hours of legal research before asserting a complex constitutional claim in a novel situation. The District Court

46

abused its discretion in reducing the 11.4 hours of requested time for due process and equal protection legal research.

<u>Hours conferring, strategizing, and brainstorming issues:</u>

Finally, the District Court erred by reducing time spent conferring, strategizing, and brainstorming, because the Board again did not provide any specific objections. The Board in its supplemental brief stated that "a careful review of the billing statements reveals that hours are submitted in which multiple attorneys 'brainstormed,' 'strategized,' and 'conferenced' resulting in an effective billable rate of $2,500 per hour for internal functions," and then repeated its general objection that multiple attorneys were unnecessary. Bd. Supp. Br. 6, E.D. Pa. Dkt. No. 77. The Board did not identify any objectionable time entries, did not state how much time was objectionable, did not identify any subject matters of objectionable attorney conferences, and did not provide any specific explanation for why attorney conferences were unreasonable. *See id.*

The District Court, without identifying any time entries and despite the Board itself not identifying how many hours were objectionable, determined that the Board objected to 35.35 hours. Appx. 043. After correctly determining that time should not be reduced based on the Board's argument that four experienced attorneys were unnecessary, the District Court found "that multiple attorneys billed different amounts for the same meeting, resulting in inconsistent time keeping,"

and then reduced the 35.35 hours to 20 hours, without specifying which time entries were being reduced. *Id.*

The District Court erred in making this reduction, because the Board did not object to attorney conferences based on inconsistent timekeeping. *See Interfaith Cmty. Org.*, 426 F.3d at 711. Even if the Board's objection warranted a reduction, the District Court abused its discretion by not providing a sufficient explanation for how it concluded that the Board objected to 35.35 hours, or why 20 hours was the appropriate amount. *See Rode*, 892 F.2d at 1187 (holding that the district court abused its discretion by reducing requested hours, without explaining why hours were excessive or why a certain number of hours was reasonable).

### D.    The District Court Erred in Defining the Relevant Market and Reducing the Hourly Rates for Attorneys Walczak and Schneider

Reasonable fees under § 1988 are "calculated according to the prevailing market rates in the relevant community." *Windall*, 51 F.3d at 1185 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The relevant community here is the Eastern District of Pennsylvania, and the District Court erred in holding that the relevant community is Allentown.

This Court in *Windall* affirmed use of the entire District of New Jersey, rather than "southern New Jersey," as the relevant market for a case litigated in the district court's Trenton vicinage. 51 F.3d at 1187-88. In *Windall*, the district court observed that it "served the entire State of New Jersey and that it is common

48

practice for attorneys throughout the state to appear in the district court's Trenton vicinage," and this Court, in affirming use of the entire District of New Jersey, noted the absence of "any evidence from which the geographic boundaries of a southern New Jersey market for legal services could be inferred." *Id.*

Here, prior decisions from the district court's judges sitting in Allentown confirm that there is no Allentown market separate from the Eastern District of Pennsylvania market. Plaintiff Voters in their fee request referred to the Community Legal Services ("CLS") fee schedule, which is based on a survey of Philadelphia lawyers, as reflecting reasonable rates for the Eastern District of Pennsylvania.[9] *See* Br. in Support of Pls.' Pet. for Att'ys' Fees, E.D. Pa. Dkt. No. 65-1 at 6-10. District court judges sitting in Allentown regularly refer to the CLS fee schedule to determine reasonable hourly rates for cases in Allentown.[10] *See MP ex rel. VC v. Parkland Sch. Dist.*, No. 5:20-cv-4447, 2021 WL 5177012, at *2, *7 (E.D. Pa. Nov. 5, 2021) (Leeson, J.) (finding the CLS fee schedule "a fair

---

[9]   Plaintiff Voters' requested hourly rates are based on the July 2018 CLS fee schedule, which was the most current version when Plaintiff Voters filed their District Court Motion. Further underscoring the reasonableness of Plaintiff Voters' requested rates, the CLS fee schedule was updated in January 2023, and the requested rates are now below or near the bottom of the CLS-recommended hourly rate ranges. *See* Pls' Position Statement Re Atty's' Fees 3, E.D. Pa. Dkt. No. 92.

[10]   In this case, the R&R was made by Magistrate Judge Straw, based in Philadelphia, and adopted by District Judge Schmehl, based in Reading.

reflection of the prevailing market rates in Philadelphia," and applying those rates to a case in Allentown); *Mains v. Sherwin-Williams Co.*, No. 5:20-cv-112, 2022 WL 2316547, at *2 & n.1 (E.D. Pa. June 28, 2022) (Gallagher, J.).

Plaintiff Voters also submitted a declaration from attorney Peter Winebrake, managing partner of Winebrake & Santillo, LLC ("W&S"), a plaintiffs-side law firm that primarily handles employment rights lawsuits throughout the Eastern District of Pennsylvania. Appx. 142 (Winebrake Decl.). Attorney Winebrake explained that W&S considers the Eastern District of Pennsylvania a single legal market, regardless of courthouse location:

> Based on my observations and experience, the attorney rates described in the CLS fee schedule represent the reasonable attorney rates in litigation **throughout** the EDPA. In submitting rates to EDPA Judges, W&S has never reduced its CLS-based rates due to the assigned EDPA Judge, the assigned EDPA courthouse, the location of the defendant's business operations, or the location of the plaintiff's residence. Simply put, W&S consistently treats the EDPA as encompassing a **single** legal marketplace dictated by the CLS fee schedule.

Appx. 145. The District Court determined that Attorney Winebrake's declaration was "insufficient to establish the requested market rate for plaintiff's side civil rights attorneys in Allentown," Appx. 054, but did not consider Attorney Winebrake's declaration for defining the relevant legal market, *see* Appx. 049-52.

Further, Attorney Winebrake's conclusion is supported by attorney appearance data, Appx. 147-254, which demonstrates that the majority of attorney

appearances for plaintiffs in civil rights cases assigned to the District Court's

Allentown Region are from attorneys with offices in the District Court's

Philadelphia Region.[11] For civil rights cases filed in the first quarter of 2022 (when

this case was filed) and assigned to the District Court's Allentown Region, 78%

(49/62) of attorney appearances for plaintiffs were from attorneys in the court's

Philadelphia Region, and only 8% (5/62) were from attorneys in the court's

Allentown Region.[12] *See* Appx. 147-199.[13] Only 15% (5/34) of cases had *any*

plaintiff's counsel from the District Court's Allentown Region. *See* Appx. 147-

199. Data from 2025 is similar. *See* Appx. 200-254.

---

[11] Based on the District Court's case assignment procedures, Plaintiff Voters use "Philadelphia Region" to refer to Philadelphia, Bucks, Chester, Delaware, and Montgomery Counties, and the court's Philadelphia courthouse location. "Allentown Region" refers to Berks, Lancaster, Lehigh, and Northampton Counties, and the court's Allentown, Easton, and Reading courthouse locations. *See* E.D. Pa. Loc. Civ. R. 40.1.

[12] Further, Intervenors Cohen and Ritter in this case are Lehigh County residents, yet both were represented by counsel from Philadelphia.

[13] Attorney appearance data was attached as Exhibits 3-6, Appx. 147-254, to Plaintiff Voters' brief regarding Allentown market rates. Exhibit 3 is a Civil Cases Report from PACER for civil rights cases opened between January 1, 2022 and March 31, 2022, and assigned to Allentown, Easton, or Reading. Appx. 147-155. Exhibit 4 is attorney information from Exhibit 3 for cases listed in the Civil Cases Report that have a represented plaintiff. Appx. 156-194. Exhibit 5 includes tables summarizing the information from Exhibits 3 and 4. Appx. 195-199. Exhibits 6-8 are corresponding exhibits for cases opened between January 1, 2025 and March 17, 2025. Appx. 200-254.

Prior decisions from the District Court's judges sitting in Allentown, Attorney Winebrake's declaration, and attorney appearance data confirm that there is no separate Allentown market for plaintiffs' civil rights attorneys who practice in the Eastern District of Pennsylvania, and the Board presented no contrary evidence. In *Windall*, there was an absence of evidence to demonstrate the boundaries of a "southern New Jersey" market, and the district court merely "observed" that it was "common practice" for lawyers from throughout New Jersey to appear in Trenton. *Windall*, 51 F.3d at 1187-88. Here, Plaintiff Voters provided affirmative evidence demonstrating that the relevant market is the Eastern District of Pennsylvania, as it is not just "common," but typical, for lawyers from the District Court's Philadelphia Region to appear in cases in Allentown. *See Windall*, 51 F.3d at 1187.

The District Court misunderstood the relevance of this evidence for determining the relevant market. The District Court, without citing any evidence, declared that "the EDPA has vicinages in Allentown, Reading, Easton, and Philadelphia, and each vicinage is over an hour and a half from Philadelphia and contain different legal markets with different attorney rates." Appx. 051. The court discounted Plaintiff Voters' attorney appearance evidence, concluding that this Court in *Interfaith Community Org.* "explicitly rejected" the notion that Plaintiff

Voters' attorney appearance data demonstrated the applicability of Philadelphia

attorney rates to this case. Appx. 052.

This Court in *Interfaith Community Org.* held that the relevant market is the

market where the litigation occurs, not the market where an attorney practices,

unless certain exceptions apply. 426 F.3d at 704-05. *Interfaith Community Org.* did

not address how to define the relevant market where the litigation occurs. Plaintiff

Voters proffered the attorney appearance data to demonstrate that there is no

Allentown market separate from the Eastern District of Pennsylvania market, not

to demonstrate an exception to allow application of rates from outside the relevant

market. The District Court incorrectly conflated these distinct issues.

Applying a separate Allentown market also would be unfair to residents of

the District Court's Allentown region. The District Court's assignment of a case to

Allentown is a matter of court administration and is outside a plaintiff's control.[14]

The District Court assigns cases to Allentown, Easton, or Reading if a *plaintiff* or

defendant resides in the court's Allentown Region. E.D. Pa. Loc. Civ. R. 40.1.

Applying a separate Allentown market, therefore, would result in a plaintiff from

Lehigh County and a plaintiff from neighboring Bucks County, with the same

---

[14]  Indeed, this case is no longer in Allentown, as this Court reassigned the case to
its Reading location "in accordance with the court's procedure for random
reassignment of cases." Order, E.D. Pa. Dkt. No. 89, Aug. 11, 2023.

claim against the same Bucks County defendant (e.g., two plaintiff co-workers with a claim against their employer in Bucks County), being entitled to different fee recoveries due to the District Court's assignment of one case to Allentown, Easton, or Reading, and the other case to Philadelphia.

The District Court's conclusion that Allentown is the relevant market, based on no evidence and a misunderstanding of the relevance of Plaintiff Voters' evidence, was clear error. The relevant market is the Eastern District of Pennsylvania.

Since the Board never disputed the reasonableness of Plaintiff Voters' proposed rates for the Eastern District of Pennsylvania market, and only argued that the relevant market is Allentown, *see, e.g.*, Bd. Br. in Opp. to Pet. for Att'ys' Fees 14-15, E.D. Pa. Dkt. No. 71, this Court should reverse the District Court's reduction of Plaintiff Voters' requested $750 hourly rate for Attorneys Schneider and Walczak. *See Rode*, 892 F.2d at 1183 ("The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" (quoting *Bell*, 884 F.2d at 720)).

### E.    The District Court Erred by Denying Plaintiff Voters an Opportunity to Seek a Reasonable Fee for Litigating Attorneys' Fees

The District Court erred by not providing Plaintiff Voters with an opportunity to submit evidence of hours worked litigating attorneys' fees. *See*

*Rode*, 892 F.2d at 1192 ("Fee petition litigation should be treated as a 'separate entity subject to lodestar and *Hensley* reduction analysis.'" (citation modified)). Plaintiff Voters in their supplemental brief, filed on May 8, 2023, explained: "As litigation over fees is ongoing, Plaintiff-Voters will supplement the record with updated declarations reflecting the full amount of their fees upon completion of the parties' briefing and any hearing the Court may deem necessary on this fee request." Supp. in Support of Pls.' Pet. for Att'ys' Fees 4, E.D. Pa. Dkt. No. 76.

After Plaintiff Voters filed their supplemental brief, litigation over fees continued for two more years. At that time, the Board had not yet responded to the Third Circuit Motion, and subsequently, the District Court ordered further statements of the parties' positions, the District Court held a court-ordered telephone status conference, and the District Court ordered submission of evidence regarding Allentown market rates for civil rights attorneys. *See* Appx. 072-74 (District Court Docket).

Without any notice that the litigation over fees had finally closed, the District Court determined that fees for litigating attorneys' fees are recoverable, but nonetheless denied Plaintiff Voters' "request for fees pertaining to the attorneys' fees litigation" because "Plaintiffs failed to provide any documentation in support of the hours worked." Appx. 058 n.18. But Plaintiff Voters had no reason to submit such documentation until after the fee litigation was concluded

(i.e., until after the District Court decided a reasonable fee for the merits phase of the litigation). The District Court erred by preemptively denying a reasonable fee for attorneys' fee litigation based on failure to provide documentation that Plaintiff Voters had no reason to submit until after the District Court made its decision. The District Court should have given Plaintiff Voters an opportunity to submit such documentation. This Court should reverse the denial of fees for litigating attorneys' fees and remand with instructions to allow Plaintiff Voters to submit documentation of hours worked litigating attorneys' fees.

## IV.    This Court Should Grant Plaintiff Voters' Full Request for Fees in the Third Circuit Motion

This Court should exercise its discretion pursuant to 3d Cir. L.A.R. 27.3 and grant the Third Circuit Motion as uncontested because the Board filed its response more than seven months late without any explanation for its failure to file a timely response.

If this Court decides to address the merits of the Third Circuit Motion, this Court should accept the District Court's recommendation to award fees, not accept the recommended reductions in hours worked or hourly rates, and grant Plaintiff Voters' Third Circuit Motion in full. For the reasons explained above, Plaintiff Voters are prevailing parties entitled to reasonable fees, and no "special circumstances" exist to justify denial of fees.

## A.    The Requested Hours Worked Are Reasonable

The Board's response to the Third Circuit Motion, E.D. Pa. Dkt. No. 85, like the Board's numerous filings regarding the District Court Motion, failed to raise objections "specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Bell*, 884 F.2d at 720. Similar to the Board's supplemental brief, E.D. Pa. Dkt. No. 77, regarding the District Court Motion, the Board's response to the Third Circuit Motion does nothing more than summarize the law on reasonable fees, generally object to the use of multiple attorneys, list eleven tasks with hours worked, and then conclude that this Court should "reduce the reasonable hours to zero or, at most, a nominal amount." E.D. Pa. Dkt. No. 85 at 17. As with the Board's submissions regarding the District Court Motion, the Board's mere listing of tasks without specific explanations for why the time spent on those tasks was unreasonable, combined with the Board's general objection to *all* of Plaintiff Voters' requested fees, make it impossible for Plaintiff Voters to meaningfully respond to the Board's objections. The Board's response to the Third Circuit Motion "merely allege[s] in general terms that the time spent was excessive," and thus is not "specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Bell*, 884 F.2d at 720.

Even if this Court determines that the Board's objections were sufficiently specific, Plaintiff Voters' fee request is reasonable. For reasons similar to why the

District Court erred in reducing hours worked for the District Court Motion, this Court should not accept the reductions recommended by the District Court for the Third Circuit Motion. In particular, many of the District Court's recommended reductions are based on its arbitrary separation of "drafting" and "revising," as well as separate considerations of each attorney's time, rather than considering the total amount of time spent preparing documents. *See* Appx. 045-48.

For example, the court determined that Plaintiff Voters' opening and reply briefs comprised a total of 105 pages, surmised that three different attorneys "drafted" the brief, and determined that a two page per hour work rate was reasonable for each of those attorneys. Applying that two page per hour work rate analysis to 105 pages results in 210 reasonable hours for "drafting" *alone*. But the court arbitrarily attributed one third of the brief to each attorney, then separately considered each attorney's hours worked as if each attorney were separately "drafting" their own 34-page (approximately one third of 105) brief. Based on this flawed analysis, the District Court concluded that only 173.2 hours were reasonable for drafting, editing, and 4 hours of research *combined*.

## B.    The Requested Hourly Rates Are Reasonable

For the reasons explained above, the Eastern District of Pennsylvania is the relevant market for determining reasonable rates. Because the Board did not object to Plaintiff Voters' proposed rates for the Eastern District of Pennsylvania, *see*

58

E.D. Pa. Dkt. No. 85 at 17-18, this Court should accept Plaintiff Voters' proposed rates. *See Interfaith Cmty. Org.*, 426 F.3d at 711.

## CONCLUSION

This Court should affirm the District Court's determination that Plaintiff Voters are prevailing parties who are entitled to fees under 42 U.S.C. § 1988 and modify the District Court's judgment to award the full amount of fees requested by Plaintiff Voters ($249,122.50). This Court should reverse the District Court's denial of Plaintiff Voters' request for a reasonable fee for litigating attorneys' fees and remand with instructions to allow Plaintiff Voters' to submit documentation of hours worked litigating attorneys' fees.

This Court should also adopt the District Court's recommendation to order fees for Plaintiff Voters' litigation of the prior appeal in this Court, but should not adopt the District Court's recommended reductions, resulting in an award to Plaintiff Voters of the full amount requested ($248,404.00).

Dated: January 12, 2026

Respectfully submitted,

*s/Richard T. Ting*
Richard T. Ting (PA 200438)
Witold J. Walczak (PA 62976)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
412-681-7736
rting@aclupa.org
vwalczak@aclupa.org

Stephen A. Loney, Jr. (PA 202535)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
215-592-1513
sloney@aclupa.org

Ari Savitzky (NY 5060181)
Sophia Lin Lakin (NY 5182076)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
212-284-7334
asavitzky@aclu.org
slakin@aclu.org

Adriel I. Cepeda Derieux (DC 90026636)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20005
202-457-0800
acepedaderieux@aclu.org

*Counsel for Plaintiff Voters*

60

# COMBINED CERTIFICATIONS

At least one of the attorneys whose name appears on this brief is a member of the bar of this Court, or has filed an application for admission pursuant to L.A.R. 46.1.

This brief complies with the word limit of Fed. R. App. P. 28.1(e)(2)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,923 words.

I certify that a true and correct copy of this brief is being filed electronically on the below date using the Court's CM/ECF system, which will electronically serve all counsel of record by generating and sending a Notice of Docket Activity.

The text of this electronic brief is identical to the text in paper copies that will be filed with the Court.

Virus detection programs SentinelOne version 25.1.3.334 and Black Point SOC have been run on this electronic brief and no virus was detected.

Dated: January 12, 2026      *s/Richard T. Ting*
                             Richard T. Ting
                             Counsel for Plaintiff Voters